UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 21-cr-248-03 (RDM) |
| | ) | |
| Carrie Williams, *defendant*. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on March 20, 2023 at 3 o'clock p.m. when she appears by videoteleconference before the Court for his sentencing hearing.

1. The defendant was charged by complaint in 22-mj-136 (ZMF) on June 10, 2022. She was arrested on August 30, 2022, when she made her first appearance in the case before Magistrate Zia M. Faruqui. She was charged with four misdemeanor offenses resulting from her presence in the Capitol during the protests and riot of January 6, 2021: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2)(D), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5105(e)(2)(G) ("Demonstrating"). She was released on her own recognizance with conditions. (ECF Doc. 10, August 30, 2022) On Sept. 13, 2022, the defendant was arraigned on the criminal Information in the instant case which charged the same offenses. (ECF Doc. 50, filed Sept. 7, 2022)

2. The defendant entered a plea of guilty before this Court to Count Four ("Parading") of the Information on December 21, 2022. The remaining charges will be dismissed by the government at sentencing, per the terms of the Plea Agreement. (ECF Doc. 69) Parading is a petty offense which carries a maximum sentence up to six (6) months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and a $10 special assessment. As a petty offense, the U.S. Sentencing Guidelines do not apply. (Presentence Investigation Report ("PSI"), page 7, ¶31) The defendant agreed to pay $500.00 in restitution toward defraying the cost of repairing damage to the U.S. Capitol, repairs which were necessary after the riot.

4. Defendant and her counsel reviewed the Draft PSI (ECF Doc. 79) and lodged no objections to it. Both have reviewed the government's sentencing memorandum and the U.S. Probation Office's Sentencing Recommendation. Counsel has also reviewed the sentencing memoranda submitted by codefendants Aaron Mileur and Tyrone McFadden. (ECF Docs. 95 and 94, respectively.)[1]

5. The reason the defendant came to Washington on January 6 was to join her cousin, codefendant Aaron Mileur, in Baltimore from Alaska, and to see the nation's capital, which she had never visited. Mr. Mileur wished to see President Trump speak before he left office, though the defendant was indifferent. Since the defendant had not seen her cousin in more than two decades, she, along with her partner Tyrone McFadden, decided to accompany Mr. Mileur. The whole affair was impromptu. Having arrived at Union Station from Baltimore, too late to see the president's actual speech on the Ellipse, the group had lunch, then went to the Capitol. They

---

[1] Those memoranda present quite a bit of detail about the circumstances in which the three defendants came to Washington on Jan. 6, how they decided to go to the Capitol, and their behavior once inside. Mr. McFadden's memoranda also reviews cases similar to those of these defendants and the sentences imposed. For these reasons, the defendant will not add in her memo to those very detailed recitations.

were part of a crowd that approached, then entered the building, which was closed to the public that day.  They did so on the east side of the Capitol, away from the chaotic and violence activity on the west side.  None of the three prepared for violence, much less even to demonstrate: the defendant did not wear clothing in support either of Mr. Trump or efforts to set aside the results of the recent election; none carried signs, flags or banners; none had gas masks or protective gear, anticipating resistance from the police or violence.  It was a series of innocent actions combined with the later, improvident decision to join the crowd and enter the building.  Though there was no effort on their part to interfere with the police, the absence of officers was likely a sign that the police had their hands full elsewhere with actual protestors (which these defendants were not), and thus not available to keep the crowd from entering. While in the Capitol or on its grounds, the defendant did not commit any violent or destructive act, either to persons or property.  Nor did she encourage others to do so.  She acknowledges, as the government represents in its Sentencing Memorandum, that she removed posts she had made to social media and that she was not truthful when she told the FBI in an interview that she had not entered the U.S. Capitol.[2]

      6. With the exception of an arrest for driving infractions in 2015 (PSI ¶54), the defendant's criminal record appears to have ended around twelve years ago.  The current crime is a Class B petty offense under the federal code, not subject to the federal sentencing guidelines, so although one's criminal history may be considered, it does not have a numerical effect on a sentencing range, as there is none for this offense.  The defendant submits that her criminal history – which consists mostly of prostitution, forged checks, marijuana possession, all

---

[2] The defendant does maintain that she and others were pushed by the large crowd behind her trying to get into the Capitol.

misdemeanors – is not relevant to whether a term of incarceration is appropriate, because the current offense stands apart – is really *sui generis* – from the offenses the defendant committed earlier in her life. (Final PSI, ECF Doc. 92, ¶¶27-54)  The offense of Parading also differs from the others in this respect: parading, demonstrating, and picketing are not unlawful *per se*; they are activities that are both lawful and, in other circumstances, are protected by the 1st Amendment.  They are criminal acts, albeit petty ones, when visitors perform them in U.S. Capitol buildings – no exceptions.  And that prohibition applies not only to those who enter or remain without permission; one can violate the law even if admitted lawfully, say, through the Visitor's Entrance on the East Side of the Capitol, after having gone through security.  It's the place of the conduct, not the conduct itself, that makes the activity illegal.  Parading differs even from the other petty offense of Disorderly Conduct[3] with which the defendant was charged (Count Three of the Information) which involves bad behavior or misbehavior.[4]

       7. The sentencing recommendations of both the government and U.S. Probation reflect assessments that incarceration of the defendant is not necessary.  Both seek periods of three years probation; the government alone seeks ninety days home detention, along with sixty (60) hours of community service.  Defendant proposes the imposition of a sentence of probation, one year in length, which the defendant submits, in light of her conduct, the circumstances support.  The only quarrel the defendant has with home detention is a practical one: although she would be permitted to work during this period (she holds a job as a cashier at a nearby 7-11), as she would

---

[3] Disruptive Conduct in the Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2)(D), also a petty offense.

[4] This is not to deny that the defendant's peaceful presence, along with that of the many other peaceful visitors, emboldened those – the true rioters – who committed violent or destructive acts against persons and property.  The sheer numbers of people makes this an object lesson of how a crowd can become a mob, then a riot..

with probation, it would also be necessary for her to clear with the probation office any activity away from her residence that is not specifically allowed by the Court in its Judgment. Having to do so is not terribly onerous, but it can present a problem when there's a need to take care of a task that comes up on short notice and the defendant is unable to reach the probation officer. The fact is that the defendant is usually either at home or nearby at work and takes very few excursions outside her immediate area. In terms of punitive value, home detention in the defendant's case does not serve the purpose it's meant to serve.

8. With respect to probation itself, the defendant understands that the Court could have its own concerns because of the defendant's several positive tests for marijuana earlier in the history of this case. (ECF Docs. 56 and 61, "PSA Compliance Report," filed Nov. 16, 2022, and Dec. 20, 2022, respectively) The defendant avers that her last use of marijuana was on September 6, 2022, after having been ordered on August 30, 2022, not to use controlled substances, but that residual amounts of THC remained in her system; the reports don't indicate if the results showed residual or new use. At the time of this writing. Pretrial Services has not reported more recent test results to the Court.[5]

9. A probationary term could be useful, too, in light of defendant's history of mental health problems, which have been detailed in the Final PSI (¶66) The Court has resources that could assist the defendant in her efforts to alleviate or eliminate such problems in the future.

10. The defendant asserts that she has generally cooperated with the investigation and has taken responsibility for her actions. She has shown respect for the Court and substantially

---

[5] Both reports refer to group sessions the defendant attends once weekly for drug treatment, with Hel Recovery. PSA had recommended twice-weekly participation but that conflicted with the defendant's work schedule.

complied with the terms of her release, which has included reporting in person to submit urine samples for drug testing.

11. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

12. The defendant submits that a period of probation, in lieu of incarceration, combined with hours of community service, would satisfy the "need for the sentence…to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." During this time, the defendant would be answerable to the U.S. Probation Office. She would be subject to the jurisdiction of the Court, knowing that any infraction could lead to revocation of the probationary term, with incarceration to follow. Such a term would at the same time provide deterrence specific to the defendant, operating as a disincentive to further criminal behavior.

13. A term of probation would also deter generally. The public is aware, from the comprehensive coverage of the January 6 events and the arrests that followed, of the serious

efforts the government has made to prosecute persons involved with the protests and, in many cases, the violence that was perpetrated. These cases, from beginning to end, have been watched very closely by the press where defendants live, so the public will be aware of the defendant's responsibility for her conduct. That can serve to deter others in the future in similar situations.

    14. For all the reasons noted above, the defendant respectfully requests a sentence of probation with no object to performing hours of community service.

    This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Emily Allen, Esq., USAO-U.S. Attorney's Office (Dist. Alaska) this 16th day of March, 2023.

/s/
_____
*Nathan I. Silver, II*